CHARLES E. MORRIS, *as Sheriff of Pottawatomie County*, v. E. M. TRUMBO.

1. JURY FINDING, *When Not Disturbed.* A general jury finding, based on disputed facts and conflicting testimony, and being approved by the district court, will not be disturbed. (*Peacock v. Boyle*, 41 Kas. 492.)

2. INSTRUCTIONS, *Construed as a Whole.* Instructions to the jury must be taken together and considered and construed as a whole, and where it appears from an examination of the entire record that no prejudicial error was committed by the trial court, the judgment will be affirmed. (*A. T. & S. F. Rld. Co. v. Midgett*, ante, p. 138.)

MEMORANDUM.—Error from Pottawatomie district court; WILLIAM THOMSON, judge. Action in replevin by E. M. Trumbo against Charles E. Morris, as sheriff. Judgment for plaintiff. Defendant brings the case here. Affirmed. The material facts are stated in the opinion, filed September 18, 1895.

*J. W. Fitzgerald & Son*, for plaintiff in error.

*D. V. Sprague*, and *B. H. Tracy*, for defendant in error.

The opinion of the court was delivered by

CLARK, J. : On the 4th day of January, 1889, Long Brothers, as plaintiffs, commenced an action in the district court of Pottawatomie county against E. G. Olson and Charles A. Ullerick, partners, doing business under the firm name of Olson & Ullerick, alleging an indebtedness to the said plaintiffs in the sum of $444.53, on an account for groceries sold and delivered to them from November 8 to December 6, 1888, and further alleging that the defendants had fraudulently assigned their firm property without valuable consideration for the purpose of defrauding their creditors.   An attachment was issued out of said court in said action, and was on the 5th day of January levied upon a portion of the goods in controversy, of the value of $1,527.99.   On the 14th day of January, the defendant in error brought this action against the sheriff for the possession of the goods attached, alleging her ownership and right of possession thereto. The plaintiff in error, as defendant in that action, filed a general denial to the petition, and upon the trial the jury found that the plaintiff was entitled to the possession of the goods attached, and assessed her damages for their detention.   A motion for a new trial was promptly filed, setting up the statutory grounds, which was overruled, and the defendant, as plaintiff in error, has brought the case to this court for review, alleging error in the admission of evidence, error in the giving and refusing of certain instructions to the jury, and error in overruling the motion for a new trial.

The record discloses that E. G. Olson and Charles A. Ullerick, for several years prior to January 1, 1889, had been carrying on a general grocery business in the city of St. Marys under the firm name of Olson & Ullerick; that about the middle of November, 1888, Z. T. Trumbo and J. G. Strong, husband and father respectively of the defendant in error, began negotiations with Olson and Ullerick for the purchase of their stock of goods. Many propositions as to the price to be paid for the said goods were made and rejected, and while no regular invoice of the stock was taken, estimates thereof were made, and an inventory of the drugs and fixtures was submitted for examination to the agents of the defendant in error, and finally, on December 21, 1888, an agreement was reached between the parties, and said stock of goods was purchased by the defendant in error, the consideration therefor being $2,700, which was evidenced by eight notes executed by Mrs. E. M. Trumbo, each for the sum of $337.50, four of which were made payable to the said E. G. Olson, and four to the said Charles A. Ullerick. Two of these notes were made payable May 1, 1889; two September 1, 1889; two January 1, 1890, and two May 1, 1890. The two notes maturing on the latter date were, at the time of their execution and delivery, each indorsed with the payment of $150, the same being the estimated value of a horse and buggy taken by Olson and Ullerick from the defendant in error in part payment of the purchase-price, leaving a balance due on said purchase of $2,400, which was secured by a chattel mortgage on all the property purchased by Mrs. Trumbo from said firm.

The record shows that the value of the stock so sold was about the amount agreed upon as its value at the time of its purchase by the defendant in error. E. G.

Olson, Charles A. Ullerick, Mr. and Mrs. Trumbo and Mr. Strong all testified that this sale was honest and *bona fide*.    Olson and Ullerick testified that there was no intention on the part of said firm, or either member thereof, to defraud their creditors, and Mrs. Trumbo and her agents testified that they had no intention in said purchase to assist the said firm in defrauding their creditors.    At the time of said purchase the defendant in error was the owner of real and personal property of the value of over $2,000 above incumbrance thereon.    Mr. Ullerick stated to Mr. Strong, in the early part of the negotiations alluded to, that the indebtednes of the firm was about $1,200, but that it was not troubling them ; that with the book accounts they had property enough outside of the stock of goods to pay their indebtedness ; that they did not have to sell, but were willing to do so.    This was the only information which the defendant in error or either of her agents obtained during the several weeks they were engaged in making this purchase as to the liabilities or assets of the firm of Olson & Ullerick.

There was evidence submitted at the trial bearing upon the question of the sale and delivery of the stock of goods to Mrs. Trumbo, December 31, 1888, and of the delivery by her to the said firm of the notes and chattel mortgage and the horse and buggy, in payment thereof, on said day ; that the bill of sale of the stock of goods, the insurance policy and the key to the store were delivered to Mrs. Trumbo on December 31 ; and that she had possession of said property, through her agent, Z. T. Trumbo, at the time the order of attachment was levied.    Whether the account of Long Brothers, upon which the suit was brought, was a valid claim against Olson and Ullerick, is not disclosed by the record.    The plaintiff in error offered in evidence

in the court below the petition and affidavit and under-taking for attachment, and the order of attachment, with the sheriff's return thereon, in the case of Long Brothers *v.* Olson and Ullerick. This evidence would tend to show the authority under which the plaintiff in error held the goods in question, but did not establish the fact as to whether or not Olson and Ullerick were indebted to Long Brothers in any sum, nor is there any evidence in the record that Olson and Ullerick were indebted to anyone at the time of this sale, except to Mr. Warren, whose claim was satisfied by an assignment of some book accounts, and excepting also a debt of about $150, which was partially satisfied by the sale, under execution, of the horse taken by Olson and Ullerick from Mrs. Trumbo in part payment of the stock of goods.

True, Mr. Olson testified that he supposed at the time of the sale that the firm was indebted somewhere from $1,500 to $1,800, but that he had no knowledge with reference thereto, except from information imparted to him by his partner, who, it appears, had the entire charge and management of the business of the firm, and who, under the rulings of the court, was not permitted to testify as to the amount of the firm indebtedness, but no complaint is made of this ruling. Z. T. Trumbo, J. G. Strong, and S. W. Strong, the husband, father, and uncle, respectively, of the defendant in error, had for several years been engaged in the milling business, both at St. Marys and Laclede, under the firm name of Trumbo & Company, and were so engaged at the time of this sale. They had known Olson and Ullerick, both socially and in a business way, for several years; they had sold them about all the flour they had retailed there for three years, the indebtedness therefor at times amounting

to from $200 to $300, but Olson and Ullerick were not indebted to them at the time of the sale.   They had the reputation of being honest and prompt in the payment of their debts, and Trumbo & Company had full confidence in their business integrity.   Immediately after the sale, the Trumbo notes to the amount of $1,725, together with other notes belonging to the firm of Olson & Ullerick, and the chattel mortgage securing the payment of the Trumbo notes, were assigned to Mr. Warren, a banker of St. Marys, for the benefit of the creditors of Olson & Ullerick.   The record is silent as to when this transfer and assignment were made, except that it was prior to the date the attachment was levied.   The notes and chattel mortgage were soon thereafter turned over by Mr. Warren to Mr. Ullerick.   What disposition was then made of these notes by Mr. Ullerick, or whether or not they had been transferred to an innocent purchaser prior to the time the defendant in error first learned that Olson and Ullerick intended, by the sale of the stock of goods to defraud their creditors, if any such fraudulent intention existed, the record does not disclose.

The plaintiff in error complains of the ruling of the court in the admission of certain evidence.   Mr. Olson, as a witness called by the plaintiff in error, had testified in his examination in chief that he turned over all of the Trumbo notes to Mr. Warren.   He afterwards modified that statement by saying that he turned them all over except the two which matured May 1, 1889, one of which was retained by him and the other by Mr. Ullerick, and this question was then asked him on cross-examination :   " I will ask you if yours was paid ? "   The defendant objected to the question, and his objection was overruled, and the answer was, " Yes, sir."   The inference might be

drawn from this question and answer, that the note maturing May 1, 1889, payable to E. G. Olson, was paid, or had been paid at the time the other notes were turned over to Mr. Warren, which was prior to the attachment levy. While this note was not due by its terms for nearly four months thereafter, Mrs. Trumbo sold certain real estate in St. Marys belonging to her soon after the purchase of the stock of goods, and, for aught that appears in the record, she may have discounted this note even before the attachment suit was commenced, and the plaintiff in error cannot now be heard to complain of the ruling of the court in this instance, as no attempt was made upon his part to ascertain whether or not this note was paid prior to the date of the attachment levy, or prior to the time Mrs. Trumbo first learned of the fraud attempted to be perpetrated by Olson and Ullerick upon their creditors, if any such intention existed.

We have carefully examined the record and the evidence submitted at the trial, together with the instructions given and those refused, and we cannot say that any prejudicial error was committed by the trial court. There was some proper evidence submitted at the trial tending to prove every material fact necessary to be found by the jury to authorize the verdict that was returned, and the questions having been passed upon by the jury, and its findings approved by the trial court, this court cannot disturb the judgment. As was said in *Weil & Co. v. Eckard*, 37 Kas. 700, "We must hold in accordance with established principles and repeated decisions, that the general finding and judgment include every material fact necessary to sustain such judgment," and that in legal contemplation there is a finding by the jury that the sale of the property in question was made in good

faith upon a sufficient consideration, and that Mrs. Trumbo was a *bona fide* purchaser thereof, and entitled to its possession.

The judgment must be affirmed.

GILKESON, P. J., concurring.

GARVER, J., not sitting in the case, having been of counsel in the court below.